FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2007 JUN 18 P 4:21
CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| GARVIN GORDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 106-078 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration,[1] | ) ) ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Garvin Gordon ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

---

[1]The Court takes judicial notice that on February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of the United States Social Security Administration. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), the Clerk is **DIRECTED** to substitute Michael J. Astrue as Defendant in this case.

## I. BACKGROUND

Based upon claims of disability dating back to November 2, 2001, Plaintiff applied for DIB and SSI on December 9, 2002, with a protective filing date of December 5, 2002. Tr. ("R."), pp. 17, 49-51, 267-71. The Social Security Administration denied his original claims, R. 29-32, and his request for reconsideration. R. 34-37. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). R. 38. Represented by counsel, Plaintiff appeared and testified at a hearing on April 8, 2005. R. 284-309. The ALJ then issued an unfavorable decision dated July 19, 2005. R. 14-24.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's mild mental retardation is a "severe" impairment, based upon the requirements in the Regulations (20 CFR §§ 404.1520 and 416.920).

3. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant has the residual functional capacity for work at all exertional levels with the following nonexertional limitations: he can perform simple, repetitive low stress work with clear superviso[n]. The claimant's past relevant work as a farm laborer did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR §§ 404.1565 and 416.965).

R. 19. Because the ALJ determined that Plaintiff could perform his past relevant work, the sequential evaluation process stopped, see 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv), and the ALJ concluded that Plaintiff "was not under a 'disability' as

2

defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f))." R. 24.

When the Appeals Council ("AC") denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. R. 6-9. Having failed to convince the AC to review his case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision. Plaintiff now argues that the ALJ erred in determining that Plaintiff did not meet Listing 12.05(C), relating to Mental Retardation, at step three of the sequential evaluation process.

## II. **THE STANDARD OF REVIEW**

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

3

Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

**A.     Remand for Consideration of New Evidence Not Warranted.**

Plaintiff presents his Statement of the Issue as follows: "Whether the ALJ erred in failing to find that Claimant satisfies the requirements of Listing 12.05(C) and is therefore disabled." (Doc. no. 9, p. 1). However, in the Argument section of his brief, Plaintiff requests that the Court vacate the unfavorable administrative decision and remand the case

4

for a fully favorable administrative determination, and he specifically designates his request as one "for a 'Sentence 6' remand, pursuant to 42 U.S.C. § 405(g)." (Id. at 3). Thus, at first blush, it is not clear whether Plaintiff is seeking a remand for consideration of new evidence that the ALJ had not had an opportunity to review, pursuant to sentence six of § 405(g), or whether Plaintiff is seeking a remand under sentence four of § 405(g) based on the argument that the ALJ improperly evaluated the information before him.[2] The Commissioner disregards the discrepancy, arguing that the Court should review the case pursuant to sentence four of § 405(g). (Doc. no. 10, p. 2).

Despite the specific request for a "Sentence 6" remand, the Argument section of Plaintiff's brief reveals that he is arguing for a sentence four remand by contending that the ALJ - not the AC - erred when he determined that he did not meet Listing 12.05(C) at step three of the sequential evaluation process. Other than in the recitation of the procedural history of the case, Plaintiff does not mention the AC in his brief or otherwise identify any new evidence that was placed before the AC that was not before the ALJ. Instead, Plaintiff focuses on the ALJ's interpretation of the evidence before him prior to the issuance of the

---

[2] The distinction between a sentence four and a sentence six remand is important. The fourth sentence of 42 U.S.C. § 405(g) states, "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." However, when presented with new evidence that was submitted to the AC, a reviewing court may only consider whether the new evidence necessitates remand under sentence six of § 405(g); a reviewing court may not consider the new evidence in determining whether the Commissioner's final decision is supported by substantial evidence. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998). Sentence six of § 405(g) authorizes a reviewing court to remand a case for consideration of new evidence only if the evidence is material and only if good cause exists for the claimant's failure to submit the evidence at the prior administrative proceeding. Vega v. Commissioner of Soc. Sec., 265 F.3d 1214, 1218 (11th Cir. 2001).

5

unfavorable decision dated July 19, 2005. Thus, the Court turns its attention to assessing whether a reversal or remand pursuant to sentence four of § 405(g) is warranted based on the ALJ's analysis of the administrative record before him.

## B. Evidence Does Not Show Satisfaction of the 12.05(C) Listing.

Plaintiff maintains that the ALJ's determination at step three of the sequential evaluation process is inconsistent with the record evidence. Simply stated, Plaintiff contends that he meets the 12.05(C) Listing. The Commissioner, on the other hand, contends that substantial evidence in the record proves otherwise. The Court notes from the outset that Plaintiff bears the burden of showing that his condition meets or equals the Listing. Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). In order to show that his impairment meets a Listing, Plaintiff needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments that are considered severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

1. **IQ Scores Alone Not Conclusive.**

Relevant to Plaintiff's case is the 12.05(C) Listing. It provides: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C). Thus, a claimant satisfies Listing 12.05(C) when he "presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).[3] The Eleventh Circuit, however, has recognized "that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Id.; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (noting that while a claimant's low IQ scores give rise to a presumption of mental retardation, such a presumption may be rebutted with evidence of daily activities that are inconsistent with a diagnosis of mental retardation); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (*per curiam*) (noting that IQ "test results must be examined to assure consistency with daily activities and behavior").

---

[3]Although the 12.05(C) Listing is generally characterized as having a two-prongs, an IQ prong and an additional impairment prong, it actually encompasses three prongs inasmuch as the Listing defines mental retardation as "significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C) (emphasis added); see also Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (noting three-part criteria for obtaining benefits under Listing 12.05(C)).

Here, the ALJ's decision acknowledged that a psychological evaluation from John Whitley, III, Ph.D., dated February 26, 2003 - in which Plaintiff was noted to have a "fair" attitude and degree of cooperation - produced IQ scores that fell within the 60 to 70 range. R. 20. Dr. Whitley concluded that Plaintiff had a verbal IQ of 67, a performance IQ of 64, and a full-scale IQ of 63, but he also stated that Plaintiff could understand and follow simple work instructions. R. 20, 210, 212. Dr. Whitley's diagnostic impression was alcohol dependence (said by Plaintiff to be in remission), depressive disorder NOS, and mild mental retardation. R. 20, 211-12.

However, as noted above, the presumption of mental retardation from low IQ scores can be rebutted with evidence of daily activities that are inconsistent with such a diagnosis, particularly when, as in this case, there is not conclusive evidence that Plaintiff's mental retardation manifested before age 22, as is required by the applicable Listing.[4] See Hodges, 276 F.3d at 1269 (recognizing requirement of Listing 12.05(C) for manifestation of mental retardation before age 22 and allowing that Commissioner may use evidence of activities of daily life to rebut presumption of mental impairment). Thus, the Court turns its attention to whether Plaintiff's daily activities are inconsistent with the low IQ scores obtained in 2003, when Plaintiff was 58 years old. (R. 208).

The Court starts by rejecting Plaintiff's argument that the "the ALJ accepted that Plaintiff's mental retardation manifested before age twenty-two." (Doc. no. 9, p. 4 n.1).

---

[4]One state agency reviewer specifically noted the lack of evidence on the early manifestation of Plaintiff's mental retardation and noted that significant substance abuse may have contributed to Plaintiff's condition. R. 225. Plaintiff's prior problems with alcohol are well documented in the record. See, e.g., R. 19-21 and record citations therein.

Rather, the ALJ specifically questioned whether Plaintiff's low IQ occurred by the requisite age, noting that Plaintiff had a 16-year history of successful work in a semi-skilled job.[5] R. 21. The ALJ also noted that Plaintiff socializes with family and friends, goes shopping, and attends daily Alcoholics Anonymous meetings. R. 20, 82, 209. Additionally, the ALJ heard testimony from Plaintiff that he had attended regular classes (as opposed to special education) through the tenth grade, drives, cooks, and sometimes runs prayer meetings.[6] R. 20, 290, 296, 300. Thus, the Court concludes that in light of the other evidence of record, including Plaintiff's daily activities, the ALJ properly determined that Plaintiff's IQ scores do not provide sufficient evidence of mental retardation before age 22 to satisfy Listing 12.05(C).

### 2. Severity of Any Additional Impairments Moot.

Plaintiff also argues that he satisfies the additional impairment prong of Listing 12.05(C) based on Dr. Whitley's diagnosis of "Depressive Disorder NOS" and notations from state agency physicians about "Organic Mental Disorders" and "Affective Disorders" that caused mild restrictions of daily living and a marked restriction in maintaining concentration, persistence, and pace. (Doc. no. 9, pp. 5-6 (citing R. 28, 224, 244, 254)). Plaintiff cites to Edwards ex rel. Edwards v. Heckler, 755 F.2d 1513, 1515 (11th Cir. 1985),

---

[5]In fact, Plaintiff testified at the hearing that he received two weeks of training when he started his 16-year period of working on a cloth cleaning machine and stated that it was unlikely that someone could perform his job after viewing just a short demonstration. R. 291-92. Counsel re-iterated the training aspect of Plaintiff's prior job at the hearing. R. 307.

[6]Moreover, Plaintiff's reported problems at the hearing that prevented him from working were primarily physical. R. 301. The Court also notes that Plaintiff did not mention mental limitations in written questionnaires related to his disability applications that were completed in 2002 and 2003. R. 61, 82A.

for the proposition that the additional impairment prong is satisfied by "something less than 'severe' within the meaning of § 404.1520(c)." Therefore, he contends that the ALJ erred by failing to determine that the "additional medical impairment" prong of Listing 12.05(C) is satisfied. (Doc. no. 9, p. 6). However, in light of Plaintiff's failure to show that he satisfies the requirements of Listing 12.05(C) concerning his intellectual functioning, his argument concerning the severity of his other physical impairments is moot.[7]

In sum, the ALJ's finding at step three of the sequential evaluation process that Plaintiff did not meet all of the necessary requirements of Listing 12.05(C) is supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 18th day of June, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[7] As noted above, to show that his impairment meets a Listing, Plaintiff needs to meet all of the specified criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan, 493 U.S. at 530.

10